Jessica Garland v. Mr. Mohamed. With the Court's permission, I would like to reserve three minutes. Bank of America admits that it did not comply with Electronic Fund Transfer Acts protections. Yet in arguing that Mr. Mohamed's account is not covered by AFTA, it asks this Court to reject the interpretation of every authority to have spoken on the issue. The CFPB, the Federal Reserve, the Congressional Joint Committee on Taxation, the IRS, and every other entity that has weighed in. But Mr. Mohamed's account is covered by AFTA for two separate and independent reasons. His account is a government benefit account, and so is covered by the prepaid account rules second definition. He also satisfies the third and fourth definitions because exclusion for qualified disaster relief payments does not apply. The ordinary tools of legal interpretation demonstrate why. Ms. Garland, can I just tell you why I think this case is really hard? You've got two routes to winning. You've got what I'll call the B road and the D road. I think on the merits, your better argument is on the B road than on the D road. I think you have an argument on both. But on the other hand, they have a forfeiture argument on both of your arguments, and I think their forfeiture argument is better on your B claim than on your D claim. So, to me, the easiest way to rule for you on this case is on the B ground, but I'm also concerned this feels like sandbagging the District Court. Would you like to try to convince me why ruling for you on the B ground is not massively sandbagging the District Court, Judge? Yes, Your Honor. I do believe that the government benefit account argument was preserved below, and that's for a couple of reasons. First of all, on Supplemental Appendix pages 43 to 44, in Mr. Muhammad's opposition to the motion to dismiss before the District Court, he specified that his account was covered by three definitions in the prepaid account rule. He didn't argue that the prepaid account rule writ large covered his account, but that three definitions. And I agree. I think it's bad for them. Their argument is that that's just a blunderbuss argument, but no, that omits A. Like, that clearly is excluding A. But he just says that. He doesn't argue it. Okay, so that's good for you. Sorry, you had two others. So, on page 49, he states that he properly pled that he submitted an application through the Maryland Department of Unemployment Insurance. He selected to receive his benefits through Bank of America, and then the Department of Unemployment Insurance opened the account with Bank of America. This meets the definition of a prepaid account, not subject to any exception. And although that's a short argument, we believe that it identifies the relevant facts to show that his account was a government benefit account because Maryland established it. And the fact that that's a short argument should not prevent this Court from allowing Mr. Muhammad and the thousands of other Marylanders who are deprived of access in a timely manner to their pandemic unemployment benefits from holding Bank of America accountable. And then what about this extraordinarily confusing exchange during the motion to dismiss hearing that I admit I have read like seven times and I don't understand what's going on? Other than it appears to me that both the District Court and Mr. Muhammad might be operating under the mistaken impression that the carve-out applies to B. Like, the best way I can understand what's going on is that Mr. and I know it wasn't you, but that his then-counsel was operating under the mistaken belief that this carve-out also applied to B, even though we now all agree that the carve-out doesn't apply to B. Is that a plausible interpretation of what's going on there? That's not the way I read the record, Your Honor. I believe that the District Court asked both parties whether or not Mr. Muhammad's account was covered as a government benefit account in their review. On pages 244 to 245 of the joint appendix, the Bank responded that the definition and that in the definition of government benefits for the account, which is contained and specified in part of the regulation, a government benefit account means an account, quote, established by a government agency. And the account was not established by a government agency. So Bank of America had an opportunity to make their argument there. And then the court asked Mr. Muhammad's counsel whether they thought that his account was covered as a government benefit account. Well, in fact, that's not quite what the District Court judge says. This is at 268. What the District Court judge says, you are not relying. The District Court seems to think, I believe that you are not relying on that argument, right? That's what the District Court judge says. Yes, Your Honor. And the court asked whether it was in not relying essential to his argument. Mr. Muhammad's counsel argued that contrary, said contrary to the Bank, and I quote, it is a government benefit account. It did, we did then note that it doesn't matter for the outcome of the case. And that's why he said he wasn't relying on that argument because there are two independent separate ways that he went. So you would have us say that we think defense counsel was saying there, yes, I think I went under B, but I also went under D, so you don't have to decide whether I went under B? Yes, in fact, it's C and D, but both of those have the qualified disaster relief exemption. That's correct, Your Honor. But isn't part of the argument that the District, at least that the District Court didn't understand that, why doesn't the District Court's opinion even address whether this is covered by B? Like I read the District Court's opinion, and it's not even that it rejects the argument it's covered by B. It just sort of doesn't even consider the possibility it's covered by B. I think that was an error. I think the District Court should have addressed it, and I think if it had, the ordinary tools of legal interpretation would have been enough to demonstrate why his account was covered. But, Your Honor, even if you don't find that this is enough to preserve, and we do believe that it is, this is still a question purely of legal interpretation. Both sides have briefed it fully on appeal. The government has waved in on appeal. There's no specific expertise the District Court has at this point. The case is alluding me, but we have a case that just says there is no free-form question of law exemption to forfeiture, right? We've said that. I believe that this Court has said that you have discretion, and I think this is a time where this Court should use its discretion. But there's no all-purpose forfeiture doesn't apply just because it's a question of law. The forfeiture analysis still applies. Forfeiture is a doctrine of discretion, and it is within this Court's discretion to find that it was not forfeited or to reach the issue. I have one more question. I'll just drop this, but I just want to confirm. Do you have any other arguments for why that argument is not forfeited? Is there anywhere else that you think he preserved this other than the ones we've identified? I think there are other facts. He describes, for example, on Supplemental Appendix page 47, notes that the defendant incorrectly argues the plaintiff's account is not covered by Regulation E because, in italics, it is established by a bank and loaded with government disaster funds. And then Mr. Muhammad recognizes that even Bank of America itself identified the account as a government prepaid debit card account in its own cardholder agreement. So I think that he does point to the facts in the opposition to the motion to dismiss that are enough to find this argument preserved. And I think that the reason this Court should, in its discretion even to find that it's not preserved, rule on this basic legal question is because it's clear from the face of the regulation itself. The regulation states that a government benefit account is an account established by a government agency for distributing government benefits to a consumer electronically. Here the question is whether Maryland established the account. To establish means brought about or into existence. I think a basic example demonstrates that that's what Maryland did here. If I walked into Bank of America and I handed the bank $100, I asked it to set up an account, one would say I have established an account. That's all that's necessary to rule on this question. I think to the contrary, the bank theory proves too much. It would render the entire prepaid definition of a government benefit account surplusage. That's because the Bank of America argues that any time a government agency contracts with a third party to issue a debit card, the government agency cannot be said to have established an account. But government agencies don't issue debit cards. That's why they contract with third party banks to do so. Indeed, every prepaid government benefit account that is covered is issued and administered in the same way that Mr. Mohammed does, through a third party. So Bank of America's reading would unnecessarily render the entire rule surplusage, and there's no reason to reach that theory. Indeed, even if you grant the premise of Bank of America's argument that in common parlance, because the bank helped us set up the account, it can be said to have established it, that doesn't answer the question here. The question is whether within the meaning of the regulation, if a government agency can have been said to have established the account. The regulation does not exclude the possibility that a government benefit account can be established when the government contracts out the account's administration to a third party. For example, although Bank of America claims that only it can be said to have established the account, other parts of the regulation and statute expressly recognize that it is not just a bank that is said to have established an account when an account is set up. For example, the statute's compulsory use prohibition, which is also in the regulation, describes a customer as the individual that would be establishing an account when it's created. And because this is such a plain reading of the regulation demonstrates that his account is covered, that's enough. But Your Honor, as you know, Mr. Muhammad's account is also covered for an independent separate reason. That's because Bank of America does not dispute the general language of the third and fourth definitions of a prepaid account rule to cover his account. And I can first address the forfeiture point onto that. We also believe that his argument that his account is not exempt as filled with qualified disaster relief benefits is not forfeited. That's because below, he made a similar argument emphasizing that the structure of the tax code demonstrates that qualified disaster relief payments does not and cannot include unemployment benefits like he received. And on appeal, we have elaborated on that argument. But below, the bank, the court, and Mr. Muhammad all recognize that it was just one sentence of the tax code that was at issue to define qualified disaster relief benefits. And so we believe that that is enough to preserve the arguments that we make on appeal. And there, it's also clear that for this separate and independent reason, his account is covered under EFTA. That's because in defining qualified disaster relief payments, Congress used a term of art that excludes unemployment benefits. And it's a fundamental canon of statutory construction that when Congress chooses to use a term of art with a precise meaning, that meaning is incorporated into the statutory meaning. And here, it's clear that the sequence of statutory enactments demonstrates that's what Congress did and that's what Congress knew it was doing. Originally, the IRS created the general welfare exemption in the 1930s to exempt certain types of government benefits from taxation. Unemployment benefits were originally included in that. But then in 1978, Congress decided it wanted to tax unemployment benefits. It recognized that nothing in a tax code prevented them from being taxed and income was broadly defined. The only reason they were not taxed was because of the general welfare doctrine. So Congress had to override the general welfare doctrine, taking unemployment benefits out of that doctrine in order to have them taxed. And that's what it did in Section 85 of the tax code. And the IRS has since expressly recognized that in that section, Section 85 precludes the general welfare exemption from applying to payments of unemployment compensation by specifically requiring those payments to be included in gross income. For those reasons, his account is covered for both B, C, and D. I note my time has expired. Thank you. We will hear next. I'm not going to try to pronounce your last name. Why don't you pronounce your last name for us? Lauren Gordetsky, Your Honor. Good to see you. Good morning and may it please the Court. Lauren Gordetsky on behalf of the Consumer Financial Protection Bureau. For 30 years, it's been clear that when a government agency sets up a program to give people benefits on a prepaid card, that's a covered government benefit account. And this is true even when the government agency contracts with a bank or other institution to help administer the account. Can I just confirm two things? Yes. Does the government have a position on the forfeiture question in this case? No, Your Honors. Does the government have a position on the D, what I'll call the C and D question in this case? No, Your Honors. Thank you. And so this is a government benefit account, and that is the best way to look at these accounts because Mr. Muhammad's account is similar to how government benefit accounts operate around the country. Virtually every state and even the federal government contracts with banks to administer benefits like unemployment benefits, pensions, and federal Social Security. Indeed, the Bureau isn't aware of a single government agency that operates a program on its own. So to take the bank's reading would mean that virtually no government benefit around the country would meet the definition of a government benefit account, and that provision would cease to have any meaning. I agree. That's a pretty compelling argument against their position. Can I ask you one that strikes me as weird about the governments? So under your theory, are accounts containing child support payments government benefit accounts, and how is that not weird? It is our position that they are, Your Honors, although this Court need not reach that issue. It does strike one as weird on first glance, right? Understood, Your Honor. But that's because it is a government program that is setting up those accounts for those payments to be added onto. But the question of child support is not an issue here. There is no dispute that unemployment is a government benefit account. Is that in the sense that we have to adopt a definition of what a government benefit account is, and if the one you're offering us covers something that seems like it shouldn't cover, that may cause us to doubt whether your definition is the right definition. Sure, Your Honor, but that question would go more to what is a government benefit rather than who established the card. And so if this Court had an issue with that, it could say, although we dispute, that child support is not a government benefit. But the question that we're asking here is who established the account, who brought the account into existence. And it was Maryland who did that here. Maryland set up the program to give people unemployment benefits. It received applications. It determined who was eligible. And then it gave that list to Bank of America to give people prepaid cards. Now Bank of America may have took the torch from there and helped administer the account, but that doesn't mean it wasn't Maryland who established it. And this interpretation is confirmed by 30 years of regulatory history. When the Federal Reserve Board first brought government benefit accounts under the purview of Reg E in the early 90s. That's what's a loaded question in the current world we all live in. What, if any, deference are you seeking from us in this case? We're not asking for deference here. This regulatory history, the preamble, industry practice, all support the common sense and clear meaning of the regulation itself, the text that this was established by. All of this, the preamble simply supports that reading, and this court has looked to, in analyzing what a text means, has looked to preambles, has looked to the purpose of a regulation, and all of that here supports it. So we are not asking for deference. And as I was saying, the original government benefit account rule said clearly that an account was covered, whether or not it was held by a bank or other institution. And that's what we have here. The bank may hold the account. It may issue the cards. But it was Maryland who established it. And that position has been uncontroversial for 30 years and unchallenged. And so it is clear that accounts like these are government benefit accounts. So you've provided your argument regarding the government benefit account, which is an account established by a government agency. And I know you're not making an argument on the exception, but it does reference an account that's directly or indirectly established through a third party. And so can you address how you would interpret, I mean, obviously the directly established would be fairly clear, but what about the indirectly established? Your Honor, it's important to look at how these regulations came about over time. And so the government benefit accounts were first established in the early 90s, and later the payroll account was covered, and later the exemptions in 2016. And all of those regulations might have looked to the original rules and changed things. And so what that means is if you look at the government benefit account provisions, you can see that the definition of when a government agency is deemed to be a financial institution is when it directly or indirectly issues a card. And so that language appears in a different provision of the government benefit accounts than the definition of an account is when it is established by the government. Reading those provisions together, you can see that a government agency could be a financial institution if it indirectly issues a card, but could still be said to establish the account. And I see my time has concluded if there are no further questions. Thank you very much. Thank you. Mr. Jay? Good morning, Your Honors. I hope it's still morning. And may it please the Court. I certainly will want to get to the merits, but I would like to begin with forfeiture because we do think that there is a problem here. The District Court very thoroughly inquired, in particular, into the B issue, and I think you can see at JA-220, that the Court carefully wrote its decision not to address this issue. It said that it was addressing the C&D issue, which refers to when there is an account that is established by a bank, and then goes through the Qualified Disaster Relief exception. Mr. Jay, what would I say about the statement by plaintiff's counsel at JA-269? He says, literally, it is a government benefit account. Those are the words out of the plaintiff's lawyer's mouth. Sure. And to say that we're not saying that he took the position that it wasn't a government benefit account, but we are saying that they did not brief that as a reason not to grant our motion to dismiss. So the briefing does not contain any such argument. The pleadings don't refer to any such argument. And so when we get to the hearing, the district judge asks, so you're not relying on this argument that it is a government benefit account? And he does say, as your Honor's question recognized, he says it is a government benefit account. And then, of course, he goes right on to say, and it doesn't matter. And we don't read that to say we have two arguments and we can win on either one of them. We read it to say, and certainly if you look at the entirety of the hearing, the argument that they took to the hearing was that these were not qualified disaster relief funds because this was not a qualified disaster. That was their argument. That's what they argued at the hearing. So just to respond very briefly to a couple of the civic points that my friend gave in the opposition to the motion to dismiss, and then I will certainly turn to the merits. I think it's just important to look at the context of where those little they are in two subsections of that brief in which the plaintiff argued, not that Reg E applies of its own force, but that Reg E should apply by contract. In other words, that Maryland had made the bank agree to follow Reg E, or that the bank had voluntarily agreed to follow Reg E. That's what those two subsections are from at 47 and 49 of the supplemental appendix. And then, in particular, in the exchange at 47 to 48, which was the second thing that my friend said when you kind of asked for any additional record citations that she was relying on, that again the brief says, and it doesn't matter, or words to that effect, that whether it was a government benefit, Dukkar does not supply any grounds for dismissal. That is not the argument that they were making on the merits. So on the forfeiture of the other point, my friend said that the brief addressed the right sentence of the statute. And that's correct, that it does address the right sentence, but their argument was entirely on a different part of that sentence. And that is the basis of our forfeiture argument. That is certainly how the district court understood the argument, that there was nothing about whether this was a program to promote the general welfare. Everything was about whether funds provided under the CARES Act were funds related to a qualified disaster. And that is not an argument they've chosen to pursue on appeal, but that is the argument they've made. And I don't think that hitting the right sentence, but the wrong part of the sentence, is enough to preserve the argument. So with that, unless the court has questions about preservation. Sorry, I do just want to say one thing, because this goes to the point about whether the court should exercise its discretion to take it up, even if forfeited. Just a couple of quick things about that. One, it would be one thing if the plaintiff had come to this court and in its opening brief said, we have a better argument, we didn't make it below, and we're asking the court to exercise its discretion. But they didn't do that, of course. All of this is briefed in its reply brief, even though they knew perfectly well that this was a new argument that they had not developed below. So we think that's significant. And just the second thing is just to represent to the court that we're not aware of any other case involving the Maryland Pandemic Unemployment Assistance Program that raises this issue that's working its way through the courts on the way to this court. So it's not as if there's a series of other cases that would call for this court to exercise its discretion to answer this issue. There is not. I have a question, I guess, on another issue. Sure. So in looking at the bank's terms and conditions, it sounds like the terms and conditions say that regulation E applies. Well, so the terms and conditions actually say in a number of places that the bank will go above and beyond regulation E. So in other words, it goes through the regulation E timeframe, for example, for dispute resolution or the limitations of liability that apply under regulation E. And then says that under the bank's zero liability program, we'll do better than that, I'm paraphrasing. So the bank certainly is used to the requirements of regulation E, and so in this agreement goes through the same as a floor for what its dispute resolution procedure would be. But I don't think that – and to be clear, the other side had a breach of contract argument that is basically based on that argument, the notion that even if regulation E doesn't apply, we can state a breach of contract claim against the bank. That's a state law claim.  dismissing the federal claim and not exercising supplemental jurisdiction. So that could be refiled in the state court if it's still timely based on a breach of contract theory. And there certainly was the piece that we were having the colloquy about a moment ago at the supplemental appendix 4748. That was an argument that sort of the bank had voluntarily agreed to follow regulation E even if it didn't apply, and they haven't pursued that argument on appeal. I have a whole series of questions that are all basically about what the words established by means, so let me just start with some of them. So the government anticipated one of the questions I was going to ask you. Under BOA's definition of established by, can you identify a real world example of something that you think is a prepaid card that's established by the government? A prepaid card specifically. So I think that there probably are federal benefits programs that, although I'm not 100% familiar with all the details of how the financial management service has contracted this out, but let me take you back a moment to where this definition comes from, because it comes from 1994 when the Fed first decided to write a rule about this. And the Fed said at that time that there were really only eight states doing this kind of thing. That's from the proposing release and the final release in 93 and 94. And it seems like at that time the governments in question were issuing what was then called AFDC, Aid to Families with Dependent Children, or food stamps and similar programs, and starting to get into electronic benefits transfer. It's clear that that's what the definition of a government benefit program was intended to get at. Some of those Congress then, before that ever took effect, some of that Congress came along and said that's going to be too hard on the states to administer, so we're going to take it out of Regulation E by statute. But that didn't wind up changing the bedrock definition of what a government benefit account is. I think the answer is no. Well, in terms of can you identify a real world account that exists today that you believe is covered by BEAT? The premise that I'm resisting is that that exists today because I think that there certainly were programs that existed in 1994 that were captured by it. The definition, of course, hasn't changed. But why were they? So I guess I'd have to know more about those programs than I do. Because if you look at it. The government was issuing me a snap card that was like drawn from just the Treasury? I think that's basically exactly right. And you will see in the rulemaking that, for example, this is at page 8715 of the final rule release from 94, that in some cases the equipment, the machinery that you would use to use your benefits, is dedicated solely to the EBT program. So these were not MasterCard and Visa network cards at that time. Dedicated solely? Where were they pulling the money from? I think very likely from a government account. So in other words, a pool of money dedicated to the government program. Not a bank account. I guess my sense is that the government doesn't really run banks. So when you said a pool of money from a government account, I'm like a pool of money in a government account deposited with a bank? I'm sure that some of them were deposited with a bank, especially the smaller states that don't have a Treasury the size of the Treasury. That's probably right. But in those cases, I think that there were not accounts set up for individuals in the same way. That's my best understanding of what was going on. I have another question on established by. The briefing seems to be, it's more of your briefing, it's partly their briefing, which is like, is it established by Maryland? Is it established by Bank of America? I guess cards on the table, what I would probably say is a matter of common English usage. The answer is both. So I guess the question, why can't an account be established by multiple entities, one of whom is the state of Maryland? Yeah, I definitely want to give an answer to that because I think you might say that multiple entities caused the accounts to be opened, just as you might say my employer caused me to open a bank account because it said, I'm tired of writing you a check. Or another way to think about it, every multi-partner law firm is established by multiple people. It can't be that it's impossible to establish something with multiple entities involved. I think that looking just at the word establish, I agree that those of us in this room could get together and establish a law firm together. But in the context of this rule, which has established by being one of the ways in which something becomes a prepaid account, like you can see that when you look over at 1005.15A1, which is the rule, the substantive rule that applies to all of these government benefits accounts, you will see that when you have a government benefit account, that makes the government a financial institution. Maybe I just think you're wrong about that when I read the regs. Because A1 and A2 have very different language to me, in a way that your brief just elides. A2 says established by the government agency, and you say that makes you a financial institution, but A1 doesn't say it when you establish an account. It says if you issue an access device, that's what makes the government into a government agency. But keep reading, because at the end of that sentence, it says from an account. And account is a defined term under A2. And I think this is pretty clear. No, but I think here, I guess, here it's clear that the access, am I right, the access device is the card? It's literally the card? There's no doubt that BOA issued the access device here, right? I don't think anyone would dispute that the issuing of the access device was done by Bank of America. I agree. Okay. Which is why Maryland is not, even if we adopt the plaintiffs' view, Maryland is now not a government agency, because Maryland did not issue that access device. No, I don't think that that's right, because Maryland may have indirectly issued it, I suppose. But anyway, the question is not Maryland's liability here. Right. But it's one of your arguments against their definition, is that it would create a world where Maryland is subject to massive crippling liability. Yeah, but again, I think that someone wanting to say, I have this benefits account. It was established by the state of Maryland, and I want to go through the dispute resolution, or I'm angry that I didn't get the disclosures that I'm supposed to get before I opened a prepaid account. They would say that Maryland indirectly issued the access device by having Bank of America do it. That's why both paragraphs of this subsection turn on account, because the access device in one has to be for use in initiating fund transfer from an account. Account is the defined term in A2. And if you look at the history of this, you'll see that there used to be just, this was the only place account was defined. And then along came the CFPB, transferred the regulatory program to its own set of rules, and then came the prepaid rule. So they thought, gosh, we better have a definition of a prepaid account in 1005.2. And they picked up this definition and carried it over into 1005.2, precisely because this has always been the definition of account that controls whether something is a government benefits account and therefore subject to Reg E, and therefore whether all of the substantive requirements that apply to government benefits accounts under 1005.15 apply. So I do think that if you tie A1 and A2, A1 and A2 can't be disentangled from each other, and the word account is what ties them together. Okay, third way of getting at this. Your friend on the other side said this example. So the logic of your position suggests that when I go and open a bank account, like I, a citizen, walks into, well, I live in Northern Virginia now, so I guess Capital One. When I walk into a Capital One, which are ubiquitous where I live, you would say that when I walk into a Capital One and say, I would like to get, I'm trying to avoid using the word established, I say to the Capital One person, I would like to get a bank account. And they're like, cool, we'd love for you to have a bank account. You would say that Capital One established that account, not me. So if we were doing the reg E analysis, yes, I would. I agree with you that in common parlance, if you went home and someone, your friend said, what did you do today? You might say, I established a bank account. I might say, oh, but right. What I wouldn't say is that Capital One established a bank account for me. I think that you might if what you were doing was, so I'm going to start getting direct deposit. So Capital One has established a bank account. My employer will start putting money in it. And that really is how these accounts are set up, that Bank of America established the account. It would have, the account would have been established, even if the money had never arrived from the state of Maryland. So the money is the funding for it, but that, of course, like. Okay, but then let's continue with that example. Bank of America didn't just open this account or create this account or some verb, not establish this account for the heck of it. They did it because the state of Maryland told them they wanted them to, right? I agree with that. Okay, so there's another one. Why aren't they acting as an agent of the state of, like, if I buy your argument that it's Bank of America, why doesn't that create a new problem for you? Because now they're clearly, to the extent it is Bank of America, it seems like it's clearly Bank of America acting as an agent for the state of Maryland. So here is why that's not that significant in the grand scheme of things, except in disaster relief cases, right? Because in most cases, a bank that establishes a prepaid account is going to be subject to C or D or both. So that is exactly why when the Bureau put out its rulemaking in 2016, it said we don't think there's really any point in having a separate 1005.15 anymore because it really ought to just roll into the more general prepaid rule because they're not that different. And in the final rule, they basically said we've decided to leave it where it is. We're not going to change the definition. And I think that's one of the significant points, that they very consciously did not change the definition of what is a government benefits account, but they also did not suggest that it has all that much independent significance. Now that there's a prepaid rule, 1005.18, and the prongs C and D of the definition, which pick up all of these bank accounts, this happens to be one of the very few cases where it does matter because there's this exception for qualified disaster relief assistance. Well, on that front then, why doesn't your interpretation just eliminate the words for the general welfare and read them entirely out of the reg? So the reg asks you to look at 139B of the tax code. Sorry, of the tax code. Right. So the tax code, so there are a couple... I'll give you an example. What is a qualified disaster payment that is not made to promote the general welfare in your view? So I think that there probably aren't any that aren't... Well, how if I just say... Okay. So their argument is this doesn't cover because of the general welfare and you say, well, everything's the general welfare. No, we're not saying that everything's the general welfare. So there's four prongs of this definition, right? 139B, 1, 2, 3, 4. And we're only talking about four, so there are things in B1, 2, and 3. The reason that this is not... So to promote the general welfare is a term of art in tax lingo. A term of art not used below, sorry. I have to note that. But a term of art in tax lingo. The consequences of a program being for the general welfare, those are set out in first 139A, which is captioned general rule. In general, a program to benefit, to promote the general welfare is not part of gross income. However, there's a proviso for that, that in section 85, there is... Congress decided in 1978 that because of the bad incentives that it creates to have unemployment compensation not be taxed, they are going to nonetheless have a special rule that unemployment benefits or benefits in the nature of unemployment compensation, those are going to be taxed. That's not the same thing as saying those aren't for the general welfare. It just says despite being for the general welfare, those are going to be taxed. And now there's an even, like complicating it even further is the subsection C of section 85 added during the pandemic saying that some pandemic unemployment assistance is taxable and some is not. And it depends on what your adjusted gross income is at the end of the year, which would make it absolutely impossible for the taxation status to be the be-all and end-all of whether qualified disaster relief funds are covered by the... That strikes me as an argument why it's not their rule about taxation status. It's not an argument for what you think those words omit that would otherwise be included. Well, I mean, so the... So they've offered an argument for what it omits that would otherwise be included. I'm not sure what your argument that those words exclude. For what... A program that is to promote the general welfare and is not... So I think there are a number of things that don't meet the IRS's definition of to promote the general welfare. So, for example, a special payment to first responders. Thank you for your service. We are giving each of you $500. That would be payment for service, and it flugs the third prong of the definition. A payment to everyone to stimulate the economy. During this pandemic, we need everybody to go out and spend more money. Here's $1,000 for everyone. That doesn't qualify because it doesn't meet the second prong of the definition of to promote the general welfare. The point is that the definition of promoting the general welfare is well-established in tax law, and we think that that absolutely is what 139B picks up. But it is 139B and not the rest that is cross-referenced by the Bureau's regulation here. 139A is where the non-tax part of it comes from, and 85 also for unemployment. So in addition to the practical disaster that would result for pandemic unemployment assistance in particular, the fact that it cross-references 139B, B has a definite meaning, and we certainly think you can give it effect without saying, well, it is just a synonym for taxation. It is not. Thank you very much. Thank you, Your Honors. Just two points to respond. First, my friend says that this court should not find the argument preserved. But in other cases where the argument is even far less developed, although this court has found an argument preserved. For example, I cite on page 21 of the reply, United States Department of Labor versus Fire and Safety Investigation Counseling Services, 915F3277 at 286 footnote 9. The Fourth Circuit explained that the argument was, quote, preserved, although the party, quote, did not cite the specific regulation and now invokes on appeal, end quote. But that is far less preserved than here. Here, it is not even a close issue. The specific regulation was flagged, and it was briefly argued below. I also want to note that my friend has effectively admitted that his reading would render the entire prepaid government benefit account rule surplusage. And I do think that that would have problematic implications, and the history of the rules demonstrates why the court should not read it as so. It is because the subparagraphs C and D don't fix the problem. Because until 2016, those didn't exist. So all of these accounts would be covered as government benefit accounts, and the rule was clear. It didn't change the definition of a government benefit account. But historically, again, just as today, government benefit accounts have always been administered through third-party contracts. So that would mean that the bank's argument would reject all government benefits around the country to the exclusion of And it doesn't explain how accounts like Maryland's unemployment benefit accounts then would have been covered prior to the 2016 rule. The bank doesn't argue they weren't covered, but the prepaid account rule's definition before the expansion in 2016 only covered payroll accounts and government benefit accounts. So there's no reason why this court should read the entire definition as surplusage, and it would render the history, to a large part, meaningless as well. Nevertheless, I'd also like to note that the bank pushes against the argument that an account can be said in common parlance to have been established by a bank and by the government. But we think that it doesn't matter if it can be said in common parlance for the bank to have established an account. All that matters is within the meaning of the regulation, if it's said that the government established the account here. And it's clear from the facts pled in the complaint, from the facts reiterated in the briefing below, and then, again, specified on appeal that what Maryland did here was after it determined that Mr. Muhammad was eligible for benefits and he requested a government prepaid debit card to receive those benefits, it directed the bank to provide him those benefits and issue a card in the amount that Maryland deemed eligible. For those reasons, his account is covered. Thank you, Your Honor. Thank you. We'll come down and greet counsel and then recess for the day. This honorable court stands adjourned until tomorrow morning. God save the United States and this honorable court.
judges: Toby J. Heytens, DeAndrea Gist Benjamin, Elizabeth W. Hanes